CRENSHAW *v.* COLLIER.

Opinion delivered November 30, 1901.

1. MARRIED WOMAN'S CONTRACT—VALIDITY.—Where a husband was unable to pay the assessment dues on a policy of life insurance payable equally to his wife and daughter, a note executed by the husband and wife to secure the payment of half the policy to one who undertook to keep the dues paid as long as the husband lived is a valid obligation of the wife so far as it is for the benefit of her separate estate, and is not void as given to secure a debt of the husband. (Page 8.)

2. MARRIED WOMAN'S CONTRACT—VOLUNTARY PAYMENT.—A husband took out a policy of life insurance for $2,000, payable equally to his wife and infant daughter, and his wife executed with him a note for $2,000 to secure the payment of one-half of the policy to defendant, in consideration of his having assumed the payment of the assessment dues during the husand's life. After the husband's death the policy was paid to the wife in two checks of $1,000, one payable to her individually and the other to her as her daughter's guardian, and she indorsed the first-mentioned check to defendant, but subsequently brought suit for its conversion, alleging that the indorsement was procured by fraud. *Held*, that the wife was liable only for the payment of one-fourth of the policy; but if she voluntarily and intentionally paid the entire amount due to defendant, she cannot recover. (Page 10.)

Appeal from Chicot Circuit Court.

ZACHARIAH T. WOOD, Judge.

Reversed.

*R. A. Buckner* and *W. S. & F. L. McCain,* for appellant.

A married woman might, even before the passage of the "married women's acts," use the property to pay her husband's debts, although she could not bind herself personally to pay them. 47 Ark. 485; 62 Ark. 146. Money paid voluntarily cannot be recovered. 79 U. S. 185.

*Robert E. Craig,* for appellee.

As to power of married woman to bind her separate property by contract, see: 47 Ark. 485; 66 Ark. 437; 62 Ark. 146; 66 Ark. 113. There was no error in the court's instructions.

BUNN, C. J. This is a suit in the Chicot circuit court by the appellee, Laura Collier, against the appellant, J. T. Crenshaw, Jr., for the conversion of a check for $1,000 of par value, drawn by the president of the board of control of the Knights of Pythias order, on the First National Bank of Chicago, in her favor. Trial by a jury, and verdict and judgment for $750,—being the amount called for by said check, less some expenses paid by the defendant,—and the defendant appeals from said judgment to this court.

The transcript in this case is so defective that it is quite difficult to ferret enough out of it to form the groundwork of an opinion at all. But there is enough to enable us to discover the nature of the suit, the relief sought, and from these data to ascertain whether or not the case was tried on the proper theory.

It appears from the testimony that the husband of the plaintiff, Thomas B. Collier, and the defendant, J. T. Crenshaw, Jr., were neighbors and friends, and both became members of the association or lodge of the order known as the "Knights of Pythias," and of the local lodge thereof located at Dermott, Chicot county, Arkansas, and both took out insurance policies in the endowment rank of said order; that the policy taken out by Collier was for $2,000, of which $1,000 were to be paid to Collier's wife, the plaintiff herein, and $1,000 to Collier's minor daughter, Mary, at his death.    It also appears that Collier was financially unable to pay the periodical dues on the policy, and that he induced the defendant to pay the same for him, so as to keep the policy alive.    This the defendant did for some time, until he had expended the sum of $145.80 in keeping up the policy, when, to protect himself by some more definite arrangement, Crenshaw had a conversation with Collier on the subject.    The result of this interview was an agreement that Crenshaw was to continue to pay the dues and premiums on the policy until the death of Collier, and, if Collier should survive Crenshaw, the latter was to make his will, and in that make provision for the payment of these dues on Collier's said policy until his death, and the same become collectible.    On the other hand, Collier and his wife (the plaintiff herein) were to make a promissory note to Crenshaw for the sum of $2,000 to secure the payment to him of the sum of $1,000, or one-half of the proceeds of the policy, as a consideration for his undertaking as above set out.    This was according to the testimony of Crenshaw in explanation of the giving of the note, and what was really intended by it; its purpose being more or less mystical without such explanation.    The note introduced in evidence originally read thus: "One day after date we promise to pay J. T. Crenshaw, Jr., or his heirs, two thousand dollars, for value received.

[Signed]                              "THOMAS B. COLLIER.

"Attest:  J. P. BAKER, M. D."      "LAURA COLLIER.

Subsequently, and after the death of Collier, Crenshaw added in the presence of witness Ferguson these words after the word "received" in the note, to-wit:  "This note is given to secure the collection of $1,000 on Mr. Collier's K. of P. endowment rank."

Mrs. Collier denied all knowledge of the agreement between her husband and Crenshaw, but admitted the execution of the note

with her husband, but says that she at first refused the same, but at the earnest entreaty of her husband and the statement of Crenshaw she finally signed·it. It was testified by Crenshaw that, some time after the death of Collier, plaintiff gave an order to the proper official of the order to pay the amount of her share to Crenshaw, or words to that effect. Subsequent to this, Crenshaw having made out the proofs of the death and sent them forward, the president of the board of control drew his two checks each for $1,000, one in favor of Laura Collier, individually, and Laura Collier as guardian of Mary Collier, and forwarded them to Crenshaw, who was then secretary of the local lodge, to be delivered to Laura Collier. This Crenshaw did,—that is, he delivered the one for the benefit of Mary Collier to Mrs. Laura Collier, her guardian; and after consultation with Mrs. Collier she indorsed the other to him, and he retained the same, and was taking his leave, when she asked him to deliver to her the $2,000 note. He replied that he would retain the same as evidence of the transaction, and afterwards added the words as aforesaid to explain its meaning, and also for the purpose of showing a settlement of it in connection with the indorsed check, not knowing what it meant, or words to that effect. This, substantially, is a statement of the facts in evidence.

Upon this state of case, the court instructed the jury as follows, to-wit: "The court instructs the jury that a wife cannot make a valid note as security for her husband, and if you believe from the evidence in this case that the $2,000 note dated July 15, 1898, signed by Thomas B. Collier and Laura Collier in favor of defendant, was given to secure a debt by Thomas B. Collier, then the same is void as to the plaintiff, Laura Collier, and created no right of action in the defendant, J. T. Crenshaw, against the plaintiff, Laura Collier."

The evidence in this case shows that the $2,000 note was given for the purpose of securing the payment of the dues and premiums of the insurance policy in favor of Laura Collier and Mary Collier, the infant daughter of herself and Thomas B. Collier. In other words, it inured to the benefit of Laura Collier. It is not the law that a married woman's promissory note given for such purpose is invalid. She can bind herself by that means, for in the true sense it is not the husband's debt, but rather an obligation of his to secure a beneficial provision for his wife and minor child. In *Sidway* v. *Nichol,* 62 Ark. 154, this court said, in constru-

ing the powers and disabilities of married women to make contracts: "Our conclusion is that a married woman has, under our law, the right to purchase personal property, or borrow money for her separate use, and that the property purchased or money borrowed becomes her separate property. Her contract to pay for the same is a contract in reference to her separate property, and creates a personal obligation, valid in law and in equity, and this without regard to whether she owned any additional property or not. * * * We have not overlooked the case of *Walker* v. *Jessup,* 43 Ark. 167, and other cases by this court, holding that a married woman cannot make an executory contract for the purchase or conveyance of land binding upon her or her heirs. There may be reasons why the executory contracts of a married woman in respect to real estate should not be enforced against her. That question is not before us, and we do not overrule those cases. But so far as the former decisions of this court may have intimated that the contracts of a married woman in respect to her separate property, and for its benefit, though valid and binding upon her in equity, create no personal obligation on her part, and can only be enforced by a proceeding in a court of equity against her separate property, the same are overruled."

The policy involved in the suit at bar was partly for the benefit of the wife, in so far it was separate property, and she could contract with reference thereto. There is nothing in the evidence to show that by signing the note she became merely the security for the antecedent or present debts of her husband, for she was in fact a principal, and the note so executed was not a mere security.

The same doctrine is announced in *Sellmeyer* v. *Welch,* 47 Ark. 485. In *Chollar* v. *Temple,* 39 Ark. 238, this court accurately defines the powers and limitations upon a married woman in binding herself for her husband's debts. The court said: "She might have bound her separate estate for its benefit or protection, or for her own peculiar benefit, or by conveyance with the required formalities, and given a remedy *in rem* against that. But she has no general capacity to contract, or bind herself personally for her husband's debts, whether pre-existing or contracted at the time. The benefit to herself must be something special, and not the incidental advantages which every wife may be supposed to derive from the money or property lent or sold to the husband." This error runs through the second, third and fifth instructions given at the instance of the

plaintiff, and to emphasize the error the court refused to give the following instruction asked by the defendant:   "The jury are instructed that a married woman may enter into a contract for the future payment of money, when she or those dependent upon her are to receive the benefit of the contract, notwithstanding it does not relate to any existing separate property."

There are several other errors, but these are enough to determine that the court had an erroneous theory of the rights and powers of the party in the case, and for the giving of said instructions and refusal of the others, the judgment is reversed, and the cause remanded.

The evidence shows that J. T. Crenshaw, Jr., on his contract was entitled to only half the amount of the policy in any event. As the policy of Mary is not involved, the defendant, under his contract, can only recover the half of the check of Laura Collier, the plaintiff, at all events; this statement not to affect, however, the question of costs in this suit.   This ruling is independent of the consideration of whether the indorsement of the check was obtained by fraud or deceit.   If the check was indorsed and transferred freely, knowingly, and voluntarily by plaintiff to defendant in settlement of his interest in the entire policy, plaintiff cannot recover any portion of the check, for the amount of the check is the half of the policy which Collier agreed to give him for keeping up the whole policy.   It is otherwise as to half of the check if plaintiff did not intend, by her indorsement of the check to Crenshaw, to settle her daughter's half also.

Reversed and remanded.