BLACKBURN *v.* TEXARKANA GAS & ELECTRIC COMPANY.

Opinion delivered January 29, 1912.

1. CONTRACT—ENTIRETY—EFFECT OF PART PERFORMANCE—There can be no recovery where there is an entire contract to do certain work for a stipulated price for the whole, and only part thereof is performed, and such part is not accepted, (Page 157.)

2. SAME—EFFECT OF MAKING PERFORMANCE IMPOSSIBLE.—Where one of the parties to a contract puts it out of the power of the other to perform or refuses to abide by its terms, the other may sue for a recovery thereon. (Page 157.)

3. SAME—DRILLING WELL—CONSTRUCTION.—Under a contract for the driving of a well to be encased with standard eight-inch well casing the contractor is required to encase the well for its entire depth. (Page 158.)

4. VOLUNTARY PAYMENT—RECOVERY.—Where one voluntarily makes a payment upon a claim with knowledge of the facts, or under such circumstances that he is affected with such knowledge, he can not recover such payment upon the ground that the asserted claim was unenforceable. (Page 159.)

5. SAME—EFFECT OF MISTAKE.—Money paid by one person to another in mutual ignorance of facts which, if known, would have apprised them that the payment was not due may be recovered, although such ignorance was not caused by any wrongful act of the payee. (Page 159.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*L. A. Byrne,* for appellant.

When the terms of a contract are ambiguous, the conduct of the parties under the contract furnishes the best guide for the interpretation thereof. 55 Ark. 414; 52 Ark. 65; 49 Ark. 129; 88 Ark. 364. It is to be construed most strongly against the party who drafted it. 73 Ark. 338; 74 Ark. 41; 90 Ark. 88. A breach by one party to a contract releases the other, and he may recover whatever is due him under the contract. 22 Ark. 258; 38 Ark. 174; 65 Ark. 320; 67 Ark. 156; 64 Ark. 228; 79 Ark. 271; 89 Ark. 368. Readiness to perform and tender of performance is equal to performance. 39 Ark. 280; 39 Ark. 340; 64 Ark. 228. Money voluntarily paid can not be recovered. 72 Ark. 552.

*William H. Arnold,* for appellee.

The failure of the consideration justifies the defendant in its counterclaim. 5 Neb. 187. And it is entitled to recover

the money paid.   132 U. S. 271;  9 M. & W. 54;  73 Ark. 567.

FRAUENTHAL, J.   This is an action instituted by J. E. Blackburn to recover the balance which he claimed was due him for drilling a well for the defendant.   In the complaint it was alleged that the well was drilled and completed in compliance with the terms of a written contract, and that defendant had accepted same and made a partial payment thereon;  that thereafter a verbal agreement was made, whereby the plaintiff was to drill the well to a greater depth, and that defendant agreed to pay the cost of the labor for such additional drilling, and of certain appliances which were furnished.   He claimed that there was under the written contract payable to him the sum of $840, upon which he had received $400, leaving a balance of $440 thereon still due;  that for the work and cost of certain appliances in drilling the well beyond the contract depth there was due $277.50;  thus making a total of $717.50 due, for which he sought judgment.

The defendant denied that plaintiff had completed the well in compliance with the terms of the written contract, or that it had made any verbal contract for additional drilling, and claimed that it was not due the plaintiff anything for the drilling of the well.   It also pleaded as a counterclaim the amount of $400 which it had paid to plaintiff, alleging that the same was paid upon condition that the well was or would be completed in full compliance with the terms of the written contract, which was not done;  and it sought a recovery of the said counterclaim.

The case was tried by a jury, and the court gave a peremptory instruction by which it directed them to return a verdict in favor of defendant for the amount of such counterclaim, less a small cost of some appliances for which defendant admitted it had agreed to pay.   The jury returned a verdict in accordance with said instruction.

The defendant owned a plant run by steam, and desired a well drilled which would supply it with a sufficient quantity of water for its boilers in the operation of its engines.   Considering the evidence adduced upon the trial of the case most favorably to the contention of plaintiff, it established the following facts:

On November 17, 1909, the parties entered into a written contract for the drilling of a well, which is as follows:

"At a price of $4 per foot complete for all work, material and superintendence I propose to drill upon the premises occupied by your electric light plant, south of the Cotton Belt tracks at some point designated by your general manager, a well for water, same to be encased with the standard 8-inch well casing and to be equipped with one or more strainers as the necessities of the case may demand for getting the water from the different strata. I agree that at a depth not to exceed 145 feet that this will produce a minimum flow of 40,000 gallons of water per day of 24 hours. Should you decide to go beyond 145 feet, we guarantee to you that at a depth not exceeding 210 feet that the minimum flow of water will be 60,000 gallons per day of 24 hours. You to make no payment on this contract at all until it is shown to the satisfaction of your general manager that the well will furnish the amount of water stated as per above. We further agree that if we find it necessary to drill to any greater depth than 145 feet to obtain 40,000 gallons per day or 210 feet to obtain 60,000 gallons per day that we will make no charge for material beyond a depth of 145 feet for 40,000 gallons or 210 feet for 60,000 gallons. We are to commence immediately upon receipt of notice from you and work to be completed with all possible dispatch. You to furnish steam and water for drilling said well."

At the time this contract was entered into, plaintiff was actually a member of a partnership composed of himself and J. H. Schley, which firm was engaged in the well-drilling business; and the contract, though signed alone by plaintiff, was really made for the partnership. But it appears that subsequently the partnership was dissolved, or by mutual consent said Schley withdrew from it, and that Blackburn continued as its owner and representative. In the lower court no objection was made to Blackburn proceeding as the sole plaintiff, or to the counterclaim being asserted solely against him; no objection was made on account of any defect of parties, either as to the cause of action prosecuted solely by said Blackburn or as to the action on the counterclaim against him individually; nor is any such question raised here. We only note that Schley was a partner of Blackburn at the execution of the contract in order to explain the use of some terms in the contract indicating that the drilling was to be done by more than one person.

The plaintiff proceeded under said written contract to drill the well until December 11, 1909, when he claimed he had drilled it to a depth of 210 feet. He then requested defendant's manager to measure the depth of the well, which he did and found that it had been drilled to the depth claimed. The water was then running out of the top of the well, and the plaintiff claimed that it would produce the quantity of water per day guaranteed by said contract. He asked for a payment upon the work in order to satisfy some indebtedness incurred by him during the drilling. It appears that the defendant's manager then made a payment to him of $400; but we think that the undisputed evidence shows that defendant's manager did not then accept the well or any work done thereon. The plaintiff testified that he told the manager that he had drilled the well to a depth of 210 feet, and that the manager then measured its depth and found his statement correct; that the manager then paid him $400 and said: "I don't want to pay any more until I let Mr. Markley know about the well." He said that he did not want to take all the responsibility on himself in accepting the well. He further testified that no test had been made of the quantity of water which the well would produce, and that he did not know what amount of water it would furnish at the depth of 210 feet.

W. L. Wood, the defendant's manager, testified that the plaintiff told him that he had the well down 210 feet, with full capacity as required by the contract, and that he desired him to measure it, which he did. He stated that the plaintiff represented that the well was all right, and that it would furnish the amount of water per day as guaranteed by the contract, and that this would be shown when the test thereof was made; that he paid the $400 relying upon this representation made by plaintiff, and with the understanding that the test which would thereafter be made would show that the well would produce the quantity of water guaranteed by the contract.

Neither of the parties testified that the defendant's manager accepted the well, or any work that was done thereon; and it clearly appears from the undisputed evidence that the payment was only made pending the test that should be thereafter made of the capacity of the well.

About that time, or shortly thereafter, a question arose

between the parties as to whether the plaintiff should encase the well for its entire depth. It appears that the plaintiff had drilled the well with a diameter of 10-5-8 inches from its top to the depth of 75 feet, and for that depth had encased it with eight-inch well casing. At that depth he claimed that he had struck hard rock formation, and for that reason it was not necessary to encase the well to a further depth. The defendant, however, insisted that the well should be encased for its entire depth, and, the plaintiff objecting thereto, defendant on January 8, 1910, agreed that it would pay for the casing material from the depth of 75 feet down, although it still claimed that under the contract plaintiff should pay therefor. In other words, the uncontroverted testimony shows that the defendant agreed to waive its right in that particular, and acceded to the demand of the defendant that it pay for such casing in order to get plaintiff to complete the well under the contract. Thereupon, plaintiff put in the additional casing, and the defendant paid for such material.

It appears that the defendant then secured pumps and tested the capacity of the well. The undisputed evidence shows that the well did not produce the quantity of water guaranteed by the contract. The largest quantity that any of the testimony shows that the well would produce was 36,000 gallons per day; and the preponderance of the evidence tends to prove that it would furnish from 12,000 to 20,000 gallons per day. The plaintiff then proceeded to drill the well beyond the depth of 210 feet, and went down for a further distance of 61.4 feet; but the uncontroverted testimony shows that the well at that depth did not produce a greater quantity than above stated, and therefore did not produce the quantity of water required by the contract. The plaintiff also insisted that the defendant was liable for and should pay him for the work of drilling the well beyond the depth of 210 feet, and made demand for payment of such work at the rate of $10 per day. The defendant refused to make such payment, contending that under the contract it was required to pay no greater sum than $840 for the well, no matter how deep the well was required to be drilled in order to obtain the quantity of water guaranteed by the contract. It would appear also that the water obtained at the depth greater than 210 feet became impregnated with for-

eign substances, making it unfit to be used in the boilers at defendant's plant, and that defendant raised objection to the quality of the water which was furnished. The plaintiff then ceased the drilling, and made demand for the payment of the balance which he claimed was due him under the contract and for the work of the additional drilling.

The right of plaintiff to recover herein must be determined by the written contract upon which his cause of action is primarily based. That contract is entire, with a stipulated price named for the performance of the whole contract. If, therefore, the entire contract was not performed, and the work done in drilling the well was not accepted, then plaintiff can not recover upon the written contract nor for the value of the work that he actually has done. There can be no recovery where there is an entire contract, with a stipulated price for the whole, and only part thereof is performed, and such part is not accepted. Under such circumstances, the price is not payable until the whole work is completed in accordance with the terms of the entire contract. *Manuel* v. *Campbell*, 3 Ark. 324; *Walworth* v. *Finnegan*, 33 Ark. 751; *Hibbard* v. *Kirby*, 38 Ark. 102; *Little Rock Well & Pump Co.* v. *Ferguson Lumber Co.*, 74 Ark. 24.

It is true that where one of the parties to a contract puts it out of the power of the other to comply therewith, or refuses to abide by its terms and breaches it, the other party may bring suit for a recovery thereon, before final completion; but this right is founded upon the doctrine that the contract has been complied with by the party seeking relief thereunder, and that the other party has breached it. *Price* v. *Thomas*, 15 Ark. 378; *Miller* v. *Thompson*, 22 Ark. 258; *Wiegel* v. *Boone*, 64 Ark. 228.

Before the plaintiff is entitled to a recovery in this case, therefore, it must appear that there was some evidence adduced that he complied with the terms of said written contract upon his part, and that the defendant breached it, or that the defendant accepted the work that was done. To determine this question, it is necessary to construe the written contract and consider it in the light of the testimony which was introduced. We are of the opinion that, by the terms of said written contract, the plaintiff obligated himself, first, to encase the well with standard eight-inch well casing for the entire depth thereof;

and, second, that he guaranteed that the well would produce 60,000 gallons of water per day at a depth of not exceeding 210 feet, and that if it did not produce that quantity of water at that depth he would drill to any greater depth necessary to produce that quantity at his own expense. In other words, under the terms of the above contract, the defendant was not to pay a greater sum than $840 for the well at a depth of 210 feet or more, and with a guaranteed capacity of 60,000 gallons of water per day.

The plaintiff claims that he was to encase the well only to a depth that was necessary, and not for its entire depth; that when he reached the rock formations it was not necessary to encase it through those strata. But the contract does not provide that the plaintiff shall encase the well only as the necessities thereof might require. It prescribes that the well shall be encased, and names the character of the casing; and this, we think, necessarily means that the entire well should be encased. The contract provides that strainers shall be furnished, and in the provision relative to the strainers it states that the strainers shall be furnished as the necessities of the case might require. The strainers were for the purpose of permitting the water to flow into the well; and the provision for the strainers, we think, manifestly indicates that the well should be entirely encased with the specified casing except in the places where the strainers were needed to permit the water to flow into the well between the various strata where it might be found. The fact that in the provision relative to the strainers the contract provides that they should be furnished only where necessary, and that there is no such provision relative to the casing, excludes the intention that the casing was only to be furnished when the necessities of the case required it.

Considered in its entirety, we think that the contract clearly shows that the parties intended and agreed that the plaintiff was to drill a well which should furnish 60,000 gallons of water per day at a depth of not exceeding 210 feet, and that plaintiff was to be paid therefor $840; that this was the capacity which the defendant desired the well to have, and that $840 was the total sum that it was to pay therefor. Therefore, if it was necessary to go any deeper to obtain that capacity, the defendant should be at no further cost or expense.

The uncontroverted evidence shows that the plaintiff did not drill a well which produced the quantity of water guaranteed by him in said written contract, and that he refused to drill the well deeper in order to obtain that guaranteed capacity at his own expense, but demanded, before drilling deeper, that the defendant should pay for the work in doing the drilling beyond that depth. The plaintiff therefore did not perform or comply with the terms of the written contract, and is not entitled to recover thereon. We do not think that there is any evidence indicating that any new or different contract was made, verbally or otherwise. At the most, the defendant only agreed to bear the cost of the additional casing that would be required to go beyond the depth of 75 feet; but there is no testimony indicating that the written contract was abandoned, or that plaintiff was relieved from any other obligation which he assumed thereunder. By the terms of the written contract, plaintiff was not entitled to recover for any work done by him beyond the depth of 210 feet, and there is no testimony showing that the defendant, verbally or otherwise, agreed to pay for such work. Under the undisputed testimony, therefore, plaintiff was not entitled to recover for the work done by him below the depth of 210 feet. As before stated, there is no testimony indicating that the defendant accepted the well or any work done thereon. The undisputed evidence shows that the payment of $400 was made, either upon the representation of the plaintiff that the well was completed and would produce the quantity of water guaranteed by the contract, and the capacity of which defendant was entirely ignorant of, or that the payment was made with the understanding and upon condition that the well would, upon the test thereafter to be made, produce the guaranteed quantity of water.

Where one voluntarily makes a payment upon a claim with knowledge of the facts, or under such circumstances that he is affected with such knowledge, then he can not recover back such payment upon the ground that the asserted claim was unenforceable. *Rector* v. *Collins*, 46 Ark. 167; *Vick* v. *Shinn,* 49 Ark. 70; *Crenshaw* v. *Collier*, 70 Ark. 5; *Lorimer* v. *Murphy,* 72 Ark. 552. But we think the rule is also well settled that money paid by one person to another in mutual ignorance of the facts which, if known, would have prevented such payment,

may be recovered back, although such mistake was not caused by any wrongful act of the party receiving such payment. *United States* v. *Barlow*, 132 U. S. 271; *Wate* v. *Leggett*, 8 Cowan 195; *Burr* v. *Veeder*, 3 Wend. 412; *Billings* v. *McCoy*, 5 Neb. 187.

In the case at bar, the uncontroverted testimony shows that the $400 was paid to the plaintiff, either upon the representation made by him that the well was of the required capacity, or with the understanding that it would thereafter be tested and that from such test it would be shown that it would produce such required capacity, and that if it did not the plaintiff would fully comply with the provisions of the written contract in drilling the well deeper until it did produce the quantity of water guaranteed in the contract. Under this undisputed evidence, the payment was not made upon any acceptance of the work done, nor was the defendant under any legal or contractual obligation to ascertain the capacity of the well before making the payment. The payment was made only to assist the plaintiff, and without any definite knowledge possessed by either party as to the capacity of the well, but with the understanding of both that the well should thereafter be tested in order to determine whether it was finally completed in accordance with and of the capacity guaranteed by the contract.

We are of the opinion, therefore, that under these circumstances the payment was made by defendant, in effect, upon consideration which failed, and therefore can be recovered back. The court did not commit any error which was prejudicial to the rights of the plaintiff by the instruction which it gave to the jury. The judgment is accordingly affirmed.