570 F.2d 720
 GRADY-GOULD WATERSHED IMPROVEMENT DISTRICT OF JEFFERSON,
LINCOLN AND DESHA COUNTIES, ARKANSAS, Appellee,
v.
TRANSAMERICA INSURANCE COMPANY, James L. Kellett, Toni S.
Kellett and James L. Kellett Company, Appellants.
 No. 77-1404.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1977.
Decided Feb. 9, 1978.
 
 Laser, Sharp, Haley, Young & Boswell, Little Rock, Ark., and Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for appellants.
 Jones & Petty, Pine Bluff, Ark., for appellee.
 Before WEBSTER and HENLEY, Circuit Judges, and SMITH, Senior District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Eastern District of Arkansas[1] in favor of appellee, Grady-Gould Watershed Improvement District of Jefferson, Lincoln and Desha Counties, Arkansas (Grady-Gould), against appellants, Transamerica Insurance Company (Transamerica) and James L. Kellett Company (Kellett Company), rendering them jointly and severally liable for $14,000.00 damages plus a 12% Penalty, costs and attorney's fees.[2] Judgment over against Kellett Company and Toni S. and James L. Kellett individually was rendered in favor of Transamerica for the full amount of Transamerica's liability. The judgment in favor of Transamerica is not challenged on appeal.
 
 
 2
 Appellee, Grady-Gould, is an improvement district organized under the laws of the State of Arkansas. Appellant, Transamerica, is a corporation organized in a state other than Arkansas with its principal place of business in Los Angeles, California. James L. Kellett and Toni S. Kellett, husband and wife, are resident citizens of the State of Missouri. Kellett Company is a corporation organized in and having its principal place of business in the State of Missouri.
 
 
 3
 The salient facts giving rise to this diversity action may be summarized as follows. On or about August 8, 1972 Grady-Gould contracted with Kellett Company to have twenty miles of ditches, located in Lincoln and Desha Counties, Arkansas, sprayed by Kellett Company to remove vegetation. Kellett Company guaranteed a 95% Kill of the existing tree growth in the treated areas. The contract provided that should a 95% Kill not be obtained, all payments by Grady-Gould to Kellett Company would be refunded. Kellett Company, pursuant to the terms of the contract, furnished Grady-Gould with a performance bond for $14,000.00, the amount of compensation agreed to be paid to Kellett Company. Transamerica was the surety on the performance bond. James L. Kellett, Toni S. Kellett and Kellett Company agreed to indemnify Transamerica against any loss sustained on the performance bond. Spraying of the ditches was completed on or about September 10, 1972, and Kellett Company was paid the full $14,000.00. The contract required that the 95% Kill be determined by inspection of the ditches after notice to Kellett Company. No such notice was given to Kellett Company prior to the field inspection which was conducted on June 11, 1973 by representatives of the Soil Conservation Service who were designated in the contract as the judges of performance. James Kellett, however, conducted his own inspection on July 12, 1973 and determined that a 95% Kill had not been achieved. The contract provided that Kellett Company could re-spray within thirty days of inspection should a 95% Kill not be achieved. At a meeting held on July 13, 1973 James Kellett admitted to the Commissioners of the District that a 95% Kill had not been achieved. At the meeting James Kellett agreed to re-spray the areas in which a 95% Kill had not been achieved. At the request of James Kellett it was agreed that the re-spraying should be completed by June 15, 1974 instead of within thirty days as provided in the contract. Kellett Company did not re-spray the ditches prior to June 15, 1974, or at any time. On July 24, 1974 Grady-Gould entered into a contract with Jack Smith to have the ditches cleared. On November 5, 1975 Grady-Gould brought this action against Transamerica on the performance bond based upon the failure of Kellett Company to achieve a 95% Kill as contracted. The original complaint was later amended to include Kellett Company and James and Toni Kellett as defendants. Transamerica filed a third-party complaint against Kellett Company and Toni and James Kellett for judgment over should Transamerica be held liable on the bond.
 
 
 4
 On appeal appellants assert four grounds for reversal. First, appellants argue that the trial court erred in finding that the failure to give notice of the inspection to Kellett Company as required in the contract was irrelevant. Second, appellants argue that the court erred in finding that Kellett Company breached the contract. Third, appellants argue that the court erred in enforcing the contract provisions providing that the full $14,000.00 be refunded if a 95% Kill was not achieved. Fourth, appellants argue that the court erred in failing to dismiss the action against Transamerica due to the two year period of limitations set out in the performance bond.
 
 
 5
 We find these arguments unpersuasive.
 
 
 6
 Paragraph 6 of the contract provided that inspection to determine performance of Kellett Company's obligation to kill 95% Of the growth would be made by representatives of the Star City Soil Conservation Service Office in May or June of 1973 and that Kellett Company would be given notice by ordinary mail of the time such inspections were to be scheduled so as to be represented at the inspections. The district court found that although no letter of notification of the field inspection was sent to Kellett Company, the Company had actual knowledge through its President, James L. Kellett, of the failure to achieve a 95% Kill, of the continuing inspection of the area by S.C.S. personnel throughout the spring and early summer of 1973, and of the meeting of the Board of Commissioners of the District held on July 12, 1973. The district court found that at the July 12 meeting James Kellett admitted that a 95% Kill had not been achieved, based on his own inspection, and expressly renewed and reaffirmed the obligation to re-apply the chemical to attain a 95% Kill by June 15, 1974. There is substantial evidence in the record to support these findings and we cannot say that they are clearly erroneous.
 
 
 7
 Appellants urge that there can be no recovery for breach of contract absent notice of the inspection in order that James Kellett could have accompanied the inspectors. The district court ruled that any such failure of notice was immaterial to Kellett Company's continued and renewed obligation to achieve the guaranteed result in light of James Kellett's admission, as President of Kellett Company, that his own inspection satisfied him that the report of the S.C.S. inspection was correct and that the 95% Kill had not in fact been achieved. We agree with the district court. No objection by Kellett Company to the lack of notice was made at the July 12, 1973 meeting. James Kellett's actions at that meeting, including his admission that his own inspection indicated a failure to obtain a 95% Kill and his request for an extension of time for performance of his contractual obligation to re-spray constitute an effective waiver of the notice requirement. It is clear that a party to a contract may waive a breach of the contract by the other party and then be liable for his own subsequent breach of the contract. Southern Pipe Coating, Inc. v. Spear & Wood Mfg. Co., 235 Ark. 1021, 363 S.W.2d 912, 913 (1963).
 
 
 8
 Appellants assert that the district court erred in holding that Kellett Company breached the modified contract because (1) Kellett Company was excused due to impossibility of performance caused by rain and (2) delay in performance was not a material breach of the contract. Appellants contend that Kellett Company was ready, willing and able to fully perform the agreement but that Kellett Company was prevented from doing so prior to the extension performance deadline of June 15, 1974 by reason of rains during the spring of that year. Appellants further contend that they stood ready to perform until Grady-Gould contracted with a third party to clear the ditches. The district court found that it was the responsibility of Kellett Company to select the most propitious time for the re-spraying and that such retreatment could have been accomplished either in the late summer of 1973 or on a number of occasions in the spring and early summer of 1974, without interference by either the elements or representatives of Grady-Gould. In light of these findings which have substantial evidentiary support, it is clear that appellants' impossibility of performance argument must fail.
 
 
 9
 The argument that delay was not a material breach of the contract sufficient to entitle Grady-Gould to rescind the contract must also fail. The record reflects that Kellett Company was granted all the time it requested within which to re-spray. It was not until July 10, 1974 that Grady-Gould demanded that the $14,000.00 be refunded by Kellett Company and it was not until July 24, 1974 that a contract was entered into to have the ditches cleared by a third person. The record also reflects that during this time the vegetation in the ditches had grown and by July, 1974 was about to result in complete obstruction of the flow of water in the ditches. The district court found that members of the Board of Commissioners of Grady-Gould attempted unsuccessfully to contact James Kellett or a representative of Kellett Company prior to June 15, 1974 to learn what Kellett Company's intentions were with regard to performance of the contract. The district court also found that at no time during the spring season, even up to June 15, 1974, the deadline for the guaranteed kill to be accomplished, did James Kellett or any representative of Kellett Company attempt to contact any representative of Grady-Gould. These findings of fact which are not clearly erroneous support the court's rejection of appellants' argument that delay was not a material breach.
 
 
 10
 Appellants argue that recovery of the full amount paid to Kellett Company as provided for in the contract amounts to enforcement of a penalty. The district court correctly stated the Arkansas law concerning failure to achieve a guaranteed result. Arkansas cases hold that where a contract provides for the contractor to obtain a specific guaranteed result and that result is not completely achieved, the contractor cannot recover the amount due upon completion and must refund any payments made during the progress of the work. United States Fidelity & Guaranty Co. v. Board of Commissioners, 137 Ark. 375, 209 S.W. 88 (1919); Blackburn v. Texarkana Gas & Electric Co., 102 Ark. 152, 143 S.W. 588 (1912); Ark.-Mo. Zinc Co. v. Patterson, 79 Ark. 506, 96 S.W. 170 (1906). It should be noted that the guaranteed kill of 95% Was tendered by Kellett Company as an inducement for Grady-Gould to enter into the contract. The contract specifically provided that all payments would be refunded should a 95% Kill not be achieved. Appellants would have this court alter the standard of performance agreed upon by the parties. We decline to do so.
 
 
 11
 Last, appellant Transamerica argues that the district court erred in failing to dismiss the action against Transamerica due to the two year period of limitations set out in the performance bond. The performance bond states, "no suit shall be brought on this bond after the expiration of two (2) years from the date on which Principal ceases work on the contract." Transamerica contends that it should not be held liable under the terms of the performance bond due to the extension of the time for performance to June 15, 1974. More specifically, Transamerica contends that the two year period of limitations had run at the time this suit was commenced since Kellett Company finished spraying the ditches on September 10, 1972 and the complaint was not filed until November 5, 1974. Transamerica cites Arkansas cases holding that such a contract period of limitations is a valid condition precedent to suit on the bond and does not violate public policy. We find these cases to be inapposite. The issue in the present case is not whether the two year period of limitations was valid but rather when the principal, Kellett Company, ceased work on the contract. Implicit in the district court's finding on this issue is a determination that Kellett Company's obligation to work on the contract continued until sometime after November 5, 1972. This determination is clearly supported by the record. Appellants, throughout their brief, point out that James Kellett requested and was granted an extension of time within which to perform the re-spraying and that Kellett Company stood ready and willing to perform until the ditches were cleared by a third party in late July, 1974. Appellants cannot be heard to say on the one hand that Kellett Company stood ready to perform and had a right to perform its contractual obligations until July, 1974, but on the other that Kellett Company ceased work on the contract prior to November, 1972.
 
 
 12
 We decline to award appellee additional attorney's fees for services on appeal, in light of the amount of attorney's fees allowed by the district court which we find to be sufficient.
 
 
 13
 Costs on appeal shall be recovered by appellee from appellants Transamerica and Kellett Company who are jointly and severally liable for such costs, with a judgment over against James L. Kellett, Toni S. Kellett and James L. Kellett Company in favor of Transamerica in the amount of any costs paid by Transamerica to appellee.
 
 
 14
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 The case was tried to The Honorable Oren Harris, United States Senior District Judge, sitting without a jury
 
 
 [2]
 Penalty and attorney's fees were assessed under Ark.Stat.Ann. § 66-3238 (Repl.1966)