## STEWART v. WEAVER.

1. A contract to bore a well at the rate of 1 dollar a foot for the first 500 feet—2 3-4 dollars for the next 100 feet—5 dollars per foot for the next 100 feet—and 8 dollars per foot for the remaining distance necessary to obtain water—the well to be put in the same finished order as the contractor's best finished wells—payment to be made 1 July, 1841," does not authorize the contractor to abandon the work, so long as it is practicable for him to continue boring, and the other party is willing he should continue.

2. The act of the employer's agent, in directing the persons in the workman's employ, to bore the well deeper, is not such an intereference, as to authorize the contractor to abandon the work.

Error to the County Court of Dallas.

Assumpsit by Stewart against Weaver. No declaration is found in the transcript, but the case seems to have been tried on the general issue to the common counts, and a special count on the contract.

At the trial, the defendant gave in evidence a written contract, entered into between the parties. This recites, that Stewart agrees to bore a well for Weaver, at the rate of a dollar per foot for the first 500 feet—2 3-4 dollars for the next 100 feet, making it 600 feet—5 dollars per foot for the next 100 feet—and 8 per foot for the remaining distance necessary to obtain water. Stewart to put the well in the same finished order as his best finished wells. Weaver to furnish provisions for the hands employed on the work, say, &c., and board Stewart and find his horse while employed at the work—payment to be made for the work 1st July, 1841.

The plaintiff proved, that under this contract, he entered on the performance of the work, and bored for water 672 feet. It was also in proof, that on the day the plaintiff's poles were drawn up, and he quit the work, water rose in the augur hole within 180 feet of the surface of the ground. It

was also in proof, that the overseer and agent of the defendant meddled and interfered with the plaintiff, in the business of the boring, in the manner following : On the 16th November, 1840, in the evening, the plaintiff said to the defendant's overseer and agent, that he had got to the second rock. The agent asked the plaintiff if he had got water. Plaintiff replied, he supposed it was about 100 feet from the top of the well. The agent then told him to go on and complete his contract, or ·he would lose his money for what he had done. The plaintiff replied it was impossible to go any further, but to satisfy the agent, the hands might peck longer. On the 18th November, the agent went to the well and found the hands still pecking ; they had pecked about two inches that morning. The witness then ordered the hands, the plaintiff being absent, to put the drill to the bottom of the well, and by 11 o'clock they pecked 18 inches. About this time the plaintiff came up. ˙ The witness told him he could peck with all ease if the water was drawn off so that the poles would not float. The plaintiff said this was impossible. Witness then proposed to him 150 or 200 feet iron poles, of rod iron, and if that did not answer the purpose, the witness would pay for the iron. The plaintiff did not do this. The hands continued to peck, and by night had finished 18 inches more. The witness remained with the hands during that day, to satisfy himself it was practicable to peck through the rock. The plaintiff remained at the well about half an hour, when he rode away, but returned later in the evening, when he found the hands still at work. He appeared to the witness to be in bad humor, without any cause, and commenced beating one of his hands on some frivolous ground. Out of this occurrence, and from some remark made upon it by the witness, some unpleasant feeling arose between them, but nothing like a quarrel. Witness then left the well. The defendant requested the court to charge the jury, that the fact stated by this witness, did not amount to such an interference as authorized the plaintiff to abandon his contract, and sue upon the same. This charge was given, notwithstanding the plaintiff insisted the jury, and not the court, were the proper judges of what amounted to an interference.

The court also charged the jury, the plaintiff could reco -

ver nothing for his services, and work, unless it was shown he had fully performed his contract, or had been materially interfered with by the defendant or his agent.

The plaintiff excepted to these several rulings, and they are now assigned as error.

PECK, for the plaintiff in error.

LAPSLEY, contra.

GOLDTHWAITE, J.—1. The difficulty in this case is, to ascertain precisely what is the legal effect of the contract between these parties, as evinced by the writing itself—for we do not learn from the bill of exceptions, that any attempt was made by the plaintiff to show, the ordinary course of boring these wells is, that the employer risks the chance that water will be procured. Whether such evidence to explain the meaning of the written contract is admissible, it is not our purpose now to inquire. The question is, does the written instrument in evidence *prima facie* bind the defendant to pay the plaintiff a compensation for his labor, unless the well is finished? When all its terms are examined, we think it must be considered as an entire contract. It will be seen, the defendant stipulates to pay for a finished well. This compensation, it is true, is to be ascertained by certain rates for different portions of the work, but the aggregate sum cannot be ascertained until the work is so far done that water is procured; and although a certain time is fixed for payment, it seems this must be taken with the reservation that the boring should be then completed; for otherwise the contract involves the absurdity of agreeing to pay on a certain day, when at that day there might be no means to ascertain the sum to be paid. Considering this an entire contract, the law is well settled, the plaintiff is entitled to no compensation without an entire performance. [Phelps v. Sheldon, 13 Pick. 50; Sickels v. Pattison, 14 Wend. 257.] I speak not now of the cases where the workmanship, although incomplete according to the contract, is accepted, or used by the employer, in which event the equitable rule seems adopted, of allowing compensation according to the value of the workmanship. Nor is there any peculiar hard-

Stewart v. Weaver.

ship in holding an artificer as impliedly warranting, that his workmanship shall effect the object contemplated. Where a person is employed in a work of skill, the employer buys both his labor and his judgment; he ought not to undertake the work if he cannot succeed, and he should know whether it will or not. [Duncan v. Blundell, 3 Starkie's N. P. Cases, 6; see also, Hill v. Featherstonhaugh, 7 Bing. 569.]

There doubtless are avocations in which the results of labor are so uncertain, that it is not usual for the workman to warrant the attainment of the object, but if, notwithstanding the chance of failure, he chooses to stipulate to accomplish the object, or, what is the same thing, to receive his compensation when the object is finished, I know of no rule which awards him remuneration for his labor if he fails. It may be that the general course of artesian well-makers, is not to warrant the obtaining water without an extra compensation, but as I have endeavored 'to show, the effect of this instrument is a warranty. If, through mistake or otherwise, the instrument does not speak the true agreement of the parties, there is a proper mode of relief. This view of the contract disposes of the cause, and shows the court did not err in instructing the jury on the question of performance.

2. On the other point, we think there is likewise no error. What was done by the defendant's overseer certainly was no intermeddling, by which the plaintiff was hindered or prevented from carrying it on. It seems rather to have been an experiment, to ascertain if the further prosecution of the work was practicable.

We can perceive no error in the record. Judgment affirmed.

ORMOND, J.—This is a very obscure, and badly drawn contract, for the boring of an artesian well. It is probably one of those cases, in which parol evidence would have been admissible to explain the contract, by proving the custom of that region of the State, in which these wells are common.

We have, however, to expound the contract, without any other guide, than the dim light which the contract itself affords, and in my judgment, that does not establish, that Stew-

art was to warrant that water would be obtained, either to flow over at the surface, or at such depth from the surface as to be available for ordinary uses.

This, I think, is fairly to be inferred from the stipulations contained in the contract. Weaver agrees to pay a certain price per foot for the first six hundred feet, and " eight dollars per foot for the remaining distance necessary to obtain water." It is perfectly clear, that Stewart could not insist on continuing to bore after he had obtained water, and it would seem equally certain, that Weaver could not insist on his prosecuting the work, after he had penetrated to such a depth that there was no hope of obtaining water. Indeed, from the nature of the work, there must be a point, when it would be impracticable to bore any longer, though long before this point would be reached, all hope would be lost of getting water.

There is one term of the contract, and indeed almost the only one which is not ambiguous, utterly hostile to this indefinite prosecution of the work, at the instance of either party, and that is that the work is to be paid for by a stipulated period. The parties therefore certainly contemplated, that the experiment of getting water could be tested by that time, and that neither party had the right to insist on its prosecution for an indefinite period.

It is very improbable, that by promising to "put the well in the same finished order as his best finished wells," Stewart intended to warrant that water would be obtained. The contract shows, that great doubt was felt as to the result of the undertaking, and it is difficult to assign a reason why a warranty was not plainly expressed, if one was intended.

The true meaning of the contract, therefore, appears to be, that Stewart was to bore, as long as it was practicable to do so, and Weaver was willing he should continue. This was the construction put upon the contract, by the parties themselves, as we find the agent of Weaver, when Stewart wished to discontinue the work, insisting he could still go on with it; and demonstrating its practicability, by superintending the workmen himself for one day, and making considerable progress; and if Stewart refused to prosecute the work,

when it was practicable for him to continue, it was a breach of the contract.

The court, in substance, charged the jury, that if Stewart did not perform his contract, and was not prevented from performing it, by the agent of the other party, he could not recover. This was undoubtedly correct, and if either party wished the court to state what the law of the contract was, a charge upon that point should have been asked. [Leigh & Co. v. Lightfoot, 11 Ala. 934.]

The court did not err, in instructing the jury, that the conduct of the agent of Weaver, as proved, did not amount to an interference, authorizing Stewart to abandon the work.

There being no error shown upon the record, the judgment must be affirmed.

COLLIER, C. J.—Unassisted by extrinsic proof, it is difficult to interpret the contract of the parties, so as to determine with certainty its true meaning. I therefore waive the consideration of the question, whether the undertaking of the plaintiff obliged him, as a condition precedent to his right to demand payment, to obtain water available for ordinary purposes. However this may be, I think it clear, that as long as it was practicable for the plaintiff to perforate the earth in the mode contemplated, and the defendant was willing to receive and compensate his services, his contract obliged him to continue the effort to obtain water. If he voluntarily, and without the consent of the defendant, abandoned the enterprize, he cannot recover. There is nothing in the record to show that the plaintiff was compelled by the defendant to cease his operations, or that the latter assented he might do so.

Note.—This and the following Opinions of Judge GOLDTHWAITE, were pronounced by the Court after his decease.