## EMIL BRUCE *vs.* MARY B. LENNON.

Argued Jan. 16, 1893.   Decided April 5, 1893.

**Mechanic's Lien not Waived by Mutual Rescission of Building Contract.**

Where a partly performed building contract is canceled by mutual consent, the value of the work already performed, and of the materials furnished, ascertained, and agreed upon, and the owner promises to pay such agreed value, the right to a lien is not waived or lost by the contractor.

**Pleading under the Lien Law.**

In an action to foreclose a lien under the provisions of Laws 1889, ch. 200, the allegations in each answer are denied, and taken to be controverted, without the interposition of a reply.

**Findings Supported by the Evidence.**

*Held,* that the evidence herein fully warranted the findings of fact to the effect that the building contract was canceled when partly performed, by mutual consent of the parties; that the value of the work then done, and of the materials already furnished, was ascertained and agreed upon; and that defendant then promised to pay for the same.

**Same.**

Other findings of fact *held* to have been justified by the evidence.

Appeal by defendant, Mary B. Lennon, from an order of the District Court of Hennepin County, *Hicks,* J., made August 30,

1892, denying her motion for a new trial. The action was to foreclose the mechanic's lien of the plaintiff, Emil Bruce.

*John Hay*, for appellant.

*Ueland & Holt*, for respondent.

COLLINS, J. From the findings of fact herein it appears that on May 25, 1891, plaintiff and defendant entered into a written contract whereby the former undertook and agreed to construct and complete for the latter, within a specified period of time, an apartment house, in accordance with certain plans and specifications for the sum of $28,687. A part of this sum was to be paid in installments, as the work progressed, on certificates obtained from the architect that the payment in question was due; the first installment of $2,000 to be paid "when the foundation was finished, and the first tier of joists on." That in September plaintiff obtained this certificate, so informed defendant, and demanded its payment; but the latter was without money, and could not pay, and was not thereafter able to pay. That in October both parties agreed to abandon and cancel the contract, because of defendant's inability to make the payments as specified. That it was then agreed that the value of the work performed upon the contract was $4,100, of which $500 had been paid, and that defendant then agreed to pay the the balance of said sum. The court also found that the reasonable value of the work and materials so performed and furnished up to this time was $4,100, and that, on account of defendant's default in said first payment, the plaintiff was justified in abandoning the contract.

Many of the assignments of error may be disposed of by a consideration of those whereby appellant attacks the findings in respect to an abandonment and cancellation of the contract by both parties, an agreement as to the value of the work then performed and materials furnished, and defendant's promise to pay an agreed balance of $3,600, upon the ground that neither is supported by the evidence. We see no just foundation for asserting that each of these findings was without proof sufficient to sustain it. There is no doubt but

that the plaintiff pushed his work with great rapidity for about three weeks, and until he learned from defendant that she was having difficulty in negotiating a loan of money on the property with which to meet the payments as agreed on in the contract. Not wishing to entirely stop work, and thereby obstruct these negotiations, he proceeded with less speed, and for this reason did not secure a right to the first payment as early as he otherwise might; but evidently the delay was to accommodate and assist the defendant, and with her sanction. Afterwards she was informed by plaintiff and by her architect that a certificate had been issued by the latter on which plaintiff was entitled to the first installment of $2,000, and frankly admitted that she was unable to pay it, because of a failure to secure the expected loan. She then consulted both of these parties as to the advisability of canceling the contract by mutual consent, and postponing building operations until the next season, and requested an estimate from both as to the value of the work already done. It was estimated by the architect at $4,100, including work which would have to be done to protect that already in. The plaintiff testified that he was offered this sum by both defendant and the architect, all these persons being present, for what had been done, he to do such work as might prove necessary for protection of the walls under the superintendency of the architect; that he accepted the proposition, took down the joists, repaired a floor, and covered up the walls, all under the direction and to the satisfaction of the architect. It seems that afterwards there was more or less negotiation between the parties as to the manner of paying or securing the sum said to have been agreed on, but without avail, so that the present action was brought to enforce the lien.

With the findings as to a cancellation of the contract by mutual consent, an agreement between the parties as to the value of the work and materials, and a promise to pay by defendant, supported by the evidence, as they were in our opinion, there remains very little for further consideration. That plaintiff was not entitled to a certificate on which he could recover the sum agreed on as a first payment, and that no such certificate was in fact obtained, becomes of little moment. But there was no lack of evidence to support plaintiff's con-

tention that, when he procured the architect's certificate, he was really entitled to the first payment. The architect, who, under the contract, was the umpire between the parties, as well as the superintendent of construction, so testified. The foundation, as such, seems to have been so far finished as to allow the placing of the joists, although there were certain things to be, and which are usually, done as the work on the building progressed. The objection made to the certificate, based upon its wording, seems very far-fetched, and without merit. Its meaning was plain and unmistakable.

There is nothing in appellant's claim that by the cancellation of the building contract the right to a lien was waived or lost. Where a partly performed building contract is canceled by mutual consent, the value of the work already done, or of the materials then furnished, ascertained and agreed upon, and the owner promises to pay such ascertained value, the lien security is not waived or lost. In these acts there is nothing to indicate an intention that the lien right shall not remain available. See *Dennis* v. *Smith,* 38 Minn. 494, (38 N. W. Rep. 695;) *McKeen* v. *Haseltine,* 46 Minn. 426, (49 N. W. Rep. 195;) *St. Paul Labor Exch. Co.* v. *Eden,* 48 Minn. 5, (50 N. W. Rep. 921.)

With the findings of fact first above mentioned, it is hardly necessary to discuss the points raised by the eighth assignment of error. No objection was made by defendant's counsel to the admission of testimony as to the actual value of the work and materials performed and furnished up to the time of the cancellation, and that his client agreed to pay such value.

As to the twelfth assignment of error, attention is called to the case of *Minneapolis Envelope Co.* v. *Vanstrom,* 51 Minn. 512, (53 N. W. Rep. 768.)

Finally, it is provided in Laws 1889, ch. 200, § 10, that all of the allegations of each answer in an action to foreclose a lien shall be deemed to be controverted as upon a direct denial or avoidance, as the case may require, without further pleading. Nothing more need be said in disposing of appellant's insistence that a reply to a part of her answer should have been served.

Other assignments of error have been examined, but need not be specially discussed. They are all without merit.

Order affirmed.

(Opinion published 54 N. W. Rep. 739.)