# FRED YLIJARVI v. HENRY BROCKPHALER.[1]

December 18, 1942.

No. 33,090.

[1]Reported in 7 N. W. (2d) 314.

*Leonard Eriksson,* for appellant.
*Barron & Bradford,* for respondent.

PETERSON, JUSTICE.

This is an action to foreclose a mechanic's lien claimed by plaintiff for labor and material performed and furnished in drilling a well on defendant's farm pursuant to express contract modified during performance.

The complaint, so far as here material, alleged in substance that the parties made an oral contract by the terms of which plaintiff undertook to dig a well on defendant's farm and defendant promised to pay him for such work "after the completion of said job" at the rate of $1.65 per lineal foot and to furnish board and lodging to plaintiff and his crew while the work was being done; that plaintiff performed the contract by drilling a well 204 feet deep; and that he was entitled to recover the contract price, which defendant had not paid, and to a mechanic's lien for the amount of the recovery and foreclosure of the lien.

The answer admitted the contract and further alleged that the parties agreed that a 4-inch casing should be sunk; that plaintiff agreed that the well should furnish a sufficient supply of usable water; and that plaintiff should not be entitled to any pay until after the well was completed and was producing sufficient usable water.

Although no reply is necessary in actions to foreclose mechanic's liens (see Minn. St. 1941, § 514.11 [Mason St. 1927, § 8500], and Bruce v. Lennon, 52 Minn. 547, 54 N. W. 739), plaintiff interposed a reply alleging that no size of casing was specified; that, although he struck water at a depth of 216 feet (sic), it was not usable; that plaintiff sought usable water at a lower depth; that while engaged in such work defendant so interfered as to make

further performance impossible; and that thereupon work was discontinued.

While the pleadings allege that the contract was to "sink" a well, it is apparent from the methods employed and the testimony as a whole that the parties meant that the well should be drilled or bored.

At the trial plaintiff did not stand on the allegations in his pleadings, but claimed that when the well had been drilled to a depth of 204 feet the contract was modified so as to substitute 2½-inch for 4-inch casing. It is not clear whether he also claimed that the contract did not bind him to drill a well that would produce an adequate supply of usable water.

We have examined the evidence with painstaking care. The testimony of defendant and his witnesses, of whom there were four, all related to him, supports the view that the contract was as claimed by him. Plaintiff's testimony and admissions in the pleadings and briefs amply support defendant's claims. In effect there was no substantial conflict that the contract as originally made was as defendant claims it was.

The real conflict was whether the contract was modified as claimed by plaintiff. Plaintiff's evidence is that when the well had been drilled to a depth of 204 feet the contract was modified so as to permit him to use 2½-inch instead of 4-inch casing. As stated above, it is not clear from his testimony whether he also claimed that by the modification he was relieved from the requirement that the well should produce a sufficient supply of usable water.

Defendant's testimony, which is supported by that of his witnesses, was explicit that there was no agreement to modify the contract as originally made; that when plaintiff had sunk the well to a depth of 204 feet plaintiff obtained one Cichy to assist with the work, using the latter's equipment; that Cichy brought along some 2½-inch casing; that plaintiff procured some casing of the same size; that, when plaintiff commenced to use the 2½-inch

casing to drill the well below the 204 feet to which it was already bored with 4-inch casing, defendant protested and informed him that he would not pay for the well unless 4-inch casing were used; that plaintiff claimed that he had a legal right to reduce the size of the casing from 4 inches to 2½ inches; that acting under such claim of right plaintiff continued to use the 2½-inch casing; that meanwhile defendant consulted a lawyer, who advised him that he would not have to pay unless the contract was performed according to its terms; that by that time plaintiff had sunk the well to a depth of 283 feet, using 2½-inch casing the last 79 feet; that he advised plaintiff that he had consulted counsel and of his insist· ence that 4-inch casing be used throughout and that he would not pay unless it was used; that some argument between the parties ensued; and that thereupon plaintiff discontinued the work, pulled up the 2½-inch casing sunk by him, and removed his equipment from defendant's premises. The 204 feet of 4-inch casing was allowed to remain in the ground. There was no evidence that the casing which remained in the ground was of any benefit to defendant. It produced no water. It was not shown that it could be used for that purpose, and the inference is that it could not.

Below, plaintiff claimed the right to recover upon the ground that he performed the contract as originally made until it was modified, and that after the modification he performed it as modified until defendant's insistence on performance according to the terms of the contract as originally made and his warning not to pay if 2½-inch instead of 4-inch casing were used below the depth of 204 feet, which plaintiff claims amounted to a wrongful interference by defendant, making further performance impossible.

The court below found that the contract was as claimed by defendant; that, although plaintiff asked defendant to modify the contract in the respects claimed, defendant refused to consent to the modification; that plaintiff had not performed the contract; and that thereafter plaintiff ceased work and removed his equipment from defendant's premises. The court concluded that plain-

tiff was entitled to no relief, and judgment was entered accordingly. Plaintiff appeals.

On the appeal, while asserting the claims made below, plaintiff has shifted his ground somewhat by claiming that when he had drilled the well to a depth of 145 to 150 feet he considered abandoning the job, but continued to perform upon the advice of defendant's son, who told him that there was nothing else for him to do. This he contends amounts to an abandonment of the contract and the making of a new contract to continue with the work on a *quantum meruit* basis.

■ The contract was entire, because by its terms it was to be performed as a whole and the compensation for performance was to be paid as a whole. Uldrickson v. Samdahl, 92 Minn. 297, 100 N. W. 5 (contract to build a house); Blackburn v. Texarkana G. & E. Co. 102 Ark. 152, 143 S. W. 588 (contract to drill a well). The fact that the contract price to be paid by defendant was to be at a stipulated amount per unit of performance such as the price per foot is of no importance. Bentley v. Edwards, 125 Minn. 179, 146 N. W. 347 (contract to sell a tract of land at a stipulated price per acre); Blackburn v. Texarkana G. & E. Co. *supra* (contract to drill well at stipulated price per foot).

■ The agreement that plaintiff should not be paid until after the well had been bored and was producing the stipulated quantity of usable water made plaintiff's performance, according to the terms of the contract, a condition precedent to any right to compensation. Gilloley v. Sampson, 203 Minn. 233, 281 N. W. 3. "Whenever an entire sum is to be paid for the entire work, the performance or service is a condition precedent; being one consideration and one debt, it cannot be divided." Washington, A. & G. Steam Packet Co. v. Sickles, 51 U. S. (How.) 419, 441, 13 L. ed. 479.

■ The duty under a contract is full and complete performance. In the case of building and construction contracts, the rule has been generally adopted that such duty is satisfied by substantial

performance. It is not necessary to decide whether the reason for the rule is that the rules requiring exact and literal performance of contracts is relaxed in the case of such contracts (Hoglund v. Sortedahl, 101 Minn. 359, 112 N. W. 408), or that substantial performance in such cases is, absent express manifestation to the contrary, the presumed intention of the parties, for the reasons that in the very nature of things literal performance as to all minutiae is often practically impossible and that the owner should not have without payment the benefits of, and the contractor should not forfeit, labor and materials expended in constructing essentially that for which the parties bargained.

We do not deem it necessary to define substantial performance at this time. For present purposes, it is sufficient to say that substantial performance means performance of all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed, except for some slight and unintentional defects which can be readily remedied or for which an allowance covering the cost of remedying the same can be made from the contract price. Deviations or lack of performance which are either intentional or so material that the owner does not get substantially that for which he bargained are not permissible. Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52; Johnson v. Fehsefeldt, 106 Minn. 202, 118 N. W. 797, 20 L.R.A.(N.S.) 1069. While on the state bench, Mr. Justice Cardozo said, in Jacob & Youngs, Inc. v. Kent, 230 N. Y. 239, 243, 129 N. E. 889, 891, 23 A. L. R. 1429, that under the rule of substantial performance "there is no general license to install whatever, in the builder's judgment, may be regarded as 'just as good,'" and that a contractor who intentionally deviates from the contract in performance cannot recover—"the willful transgressor must accept the penalty of his transgression. * * * For him there is no occasion to mitigate the rigor of implied conditions. The transgressor whose default is unintentional and trivial may hope for mercy if he will offer atonement for his wrong." In Groves v.

John Wunder Co. 205 Minn. 163, 166, 286 N. W. 235, 123 A. L. R. 502, we quoted with approval part of this excerpt.

Contrary to plaintiff's contention, the rules applicable to building and construction contracts apply to those for drilling or boring wells. Where a contractor by express stipulation agrees that he will dig, drill, or bore a well which will produce a certain quantity and quality of water, he cannot recover until he has not only dug, drilled, or bored the well, but also until it produces water of the quantity and quality stipulated in the contract. Blackburn v. Texarkana G. & E. Co. 102 Ark. 152, 143 S. W. 588, *supra;* Jackson v. Creswell, 94 Iowa 713, 61 N. W. 383; Genni v. Hahn, 82 Wis. 90, 51 N. W. 1096; Keller v. Oberreich, 67 Wis. 282, 30 N. W. 524. In Spear v. Snider, 29 Minn. 463, 13 N. W. 910, we assumed that a contract to dig or bore a well is no different from any other contract so far as concerned the obligation of performance or the divisibility of its provisions. Plaintiff cites numerous cases which he contends hold to the contrary. Some, like our own decision in Skalsky v. Johnson, 138 Minn. 275, 164 N. W. 978, L. R. A. 1918A, 1084, involve the question whether there is an implied warranty that a well will produce a given quantity or quality of water, or both. The instant case involves an express warranty. Other cases cited, like Finch v. McIntosh, 171 Ill. App. 120, involve the construction of contracts differing essentially from the one involved here. Still others, like Bohrer v. Stumpff, 31 Ill. App. 139, involve the sufficiency of performance under contracts differing from the instant one. Suffice it to say that none of them are in point.

A stipulation in a contract to dig or bore a well using a casing of a certain size, being a legitimate matter of agreement, the contractor has no right to use a smaller size casing than that provided for in the contract. Gosson v. Witt, 167 Iowa 247, 149 N. W. 274; Gillespie Tool Co. v. Wilson, 123 Pa. 19, 16 A. 36. The case of Hall v. Cook (Tex. Civ. App.) 117 S. W. 449, cited by plaintiff on the argument, does not hold to the contrary. There

the owner accepted as full performance a well drilled under a contract calling for 3-inch casing, which to his knowledge had not been cased as to a certain part. Thereafter, by a new contract, the parties agreed that the drilling should be continued with 2-inch casing. The court held that the owner waived the right under the first contract to insist that the entire well be cased as required by the contract and expressly authorized the use of 2-inch casing under the second contract. Here, there was neither waiver of performance nor a second contract stipulating for a smaller sized casing.

In considering the appeal, we must take the facts as found by the court below. Where the evidence is in conflict, the terms of a contract and the question whether there was substantial performance of it are fact questions. Service & Security, Inc. v. St. Paul F. S. & L. Assn. 211 Minn. 199, 300 N. W. 811; Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52, *supra*. Findings of fact supported by evidence, although the evidence is in conflict, are entitled to the same weight as a verdict of a jury and are conclusive on appeal. In re Trusteeship Under Will of Melgaard, 200 Minn. 493, 274 N. W. 641; Haedge v. Gaver, 173 Minn. 207, 217 N. W. 109. Hence we consider the facts to be as found below, that the contract was as defendant claims; that it was not modified; that furnishing the materials and performing the labor mentioned did not constitute substantial performance; and that plaintiff ceased work and removed his equipment from defendant's premises.

In that view, it necessarily follows that plaintiff's notion that he had the right, after he drilled the well to a depth of 204 feet, to substitute 2½-inch for 4-inch casing was entirely erroneous; that the substitution of 2½-inch for 4-inch casing constituted an intentional violation of the contract; and that plaintiff failed to perform the contract because he failed to bore a well that would produce the quantity and quality of water for which the contract called. For failure to perform, plaintiff was not entitled to re-

cover under the contract. Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52, and other cases, *supra*.

■ Nor can there be a recovery upon a *quantum meruit* for part performance. The basis of such recovery is that the defendant has received a benefit from plaintiff which it is unjust for him to retain without paying for it. It was not shown that plaintiff's part performance was a benefit to defendant. He removed the 79 feet of 2½-inch casing, So far as appears, the 204 feet of 4-inch casing still in the ground is useless. No water, much less water of usable quality, can be drawn through it. Benefits aside, it was not unjust for defendant to retain the work and materials performed and furnished without paying for them. Where a building and construction contract is entire and the contractor voluntarily and without excuse abandons it after part performance, he has no claim, equitable or otherwise, to any compensation whatever. Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52, *supra*. In the case of building contracts, where the contractor has expended labor and material upon the land of another, the latter cannot, and therefore has no option to, return them. The case is different from one where items of personal property have been received which are capable of return by mere delivery and consequently the party has an option to keep or return the goods. In Elliott v. Caldwell, *supra,* we said (43 Minn. 361, 45 N. W. 847):

"The acceptance of the benefit of a partial performance, or of performance in a way different from that contracted for, where the party has the option of returning or rejecting the consideration performed, will usually be sufficient to imply a promise to pay a compensation commensurate with the benefit accepted. But the mere fact that a part-performance has been beneficial is not enough to render the party benefited liable to pay for the advantage. It must appear that he has taken the benefit under circumstances sufficient to raise an implied promise to pay for the work done, notwithstanding the non-performance of the special contract. Therefore, in a case of a building on land under a contract which

the builder fails to complete, or which he completes in a manner not conforming to the contract, so that the owner cannot be charged with the contract price, the mere fact of the building remaining on the land, and that the owner resumed possession and enjoys the fruits of the labor, is not such an acceptance as alone will imply a promise to pay for it; for the possession of the land necessarily involves possession of the buildings in their existing state, and the owner has no option of rejecting them."

■ The fact that defendant's son told plaintiff when the latter considered abandoning the contract that there was no alternative for him but to complete performance, so far from abandoning the contract and thereby authorizing performance on a *quantum meruit* basis, amounted only to advice that he was bound by his contract to perform it. See King v. D. M. & N. Ry. Co. 61 Minn. 482, 63 N. W. 1105. If what the son said should be construed as a direction to proceed with the work, it would make no difference. A direction by the owner's agent to a contractor drilling a well to bore deeper is not an interference with performance and does not authorize the contractor to abandon the work. Stewart v. Weaver, 12 Ala. 538.

Some other points have been raised, but they are so clearly without merit that we refrain from discussing them.

Our conclusion is that there should be an affirmance.

Affirmed.