**PAVING PLUS, INC., Appellant,**

**v.**

**PROFESSIONAL INVESTMENTS, INC., et al., Respondents,**

**Minnesota State Bank, et al., Defendants,**

**First National Bank of Waconia, Respondent.**

**No. C3–85–1078.**

Court of Appeals of Minnesota.

March 4, 1986.

James L. Berg, Minneapolis, for Paving Plus, Inc.

Alonzo B. Seran, Minneapolis, for Professional Investments, Inc.

Macronald Willemssen, Melchert, Hubert, Sjodin & Willemssen, Chaska, for First Nat. Bank of Waconia.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

Paving Plus, Inc. appeals from a judgment discharging a mechanics' lien and releasing the property from the lien and from the trial court's denial of a motion for post-trial relief. Paving Plus sought to recover the full contract price for paving work performed. The trial court failed to award Paving Plus any damages. We affirm.

### FACTS

Appellant Paving Plus, Inc. was a Minnesota corporation engaged in the asphalt paving business. Gary Anderson was the president and sole owner of Paving Plus. Respondent Professional Investments, Inc. is a Minnesota corporation that owns and develops commercial property and is owned by respondent David F. Nixon.

In the spring of 1977, Nixon contacted Paving Plus to obtain an estimate to install black top in the parking lot area of a small, commercial shopping center. Anderson testified that because the parking lot was situated in a low, swampy area that had been filled with clay from the hill, Paving Plus employees recommended installing a six-inch asphalt mat over a four-inch limerock base. Nixon testified otherwise, stating that Paving Plus employees agreed that a six-inch mat was not necessary and that a two-inch mat would last for approximately three or four years. Pursuant to Nixon's request, appellant re-estimated the cost of the job using only a two-inch asphalt mat. Both parties agreed to the terms of the contract, which required that the four-inch limerock base be installed and compacted. Appellant completed the paving work in the summer of 1977, and respondent paid the $9,000 contract price in full.

In 1978, Nixon contacted Paving Plus to do additional paving work at this job site. The parties entered into a $4,525 contract on June 9, 1978. This contract included repair work to certain areas of the 1977 job, installation of blacktopping surrounding a temporary bank building using a two and one-half inch asphalt mat, and paving a portion of the parking lot and alley. A portion of the contract required that Paving Plus use two and one-half inches of hot asphalt concrete "rolled and compacted to an even textured surface and for maximum density." A portion of the contract also required that Paving Plus use material that meets Minnesota state specifications and complete all work "in a workmanlike manner according to standard practices."

Appellant began work on approximately June 26, 1978 and completed work on July 28, 1978. Appellant returned in August to repair a small broken area and to patch some other small areas. At that time, Nixon refused to pay appellant for any of the work. Nixon offered to deposit the money in an escrow account pending completion of additional repairs, but appellant refused the offer. Appellant filed a mechanics' lien against the premises and commenced a foreclosure action.

The testimony of witnesses at trial varied greatly. Anderson testified that Nixon claimed he did not have the money to pay appellant. Nixon testified that he refused to pay because the 1978 work began to break up almost immediately. The owner of the liquor store in the shopping center testified that the alley area behind the liquor store broke up immediately and that the area in front of the liquor store broke up within a few weeks. She also testified that the parking lot sank to a depth of three to four inches in front of the liquor store.

There was much testimony regarding the proper thickness of the asphalt. Nixon testified that the two-inch asphalt mat installed in 1977 held up well but that the two and one-half inch mat installed in 1978 failed almost immediately. Nixon admit-

ted, however, that numerous defects existed in the 1977 work. Both Anderson and Anthony Louris, an expert witness called by Nixon, testified that a two and one-half inch asphalt mat, under normal shopping center traffic, would hold up for two to three years. Within three months after completion of the 1978 work, however, Nixon constructed a permanent bank building on the site using heavy construction equipment. Anderson testified that such equipment tended to cause the asphalt mat to break up faster. Anderson admitted, however, that heavy, tandem-wheeled gas transport and delivery trucks had operated over the two-inch asphalt installed in 1977.

Finally, there was testimony that appellant had improperly packed the subbase material. Louris testified that the Department of Transportation (DOT) standards applied to this contract and that they required a contractor to compact the subsoil using a pneumatic roller until there is no further evidence of consolidation. Anderson testified that the subbase material was compacted by Hubert Widmar, a contractor hired by Nixon to do the escalation and compaction of the subsoil for the entire shopping center. There was also testimony that appellant compacted the limestone base material using a heavy duty truck loaded with fourteen tons of material, which results in a greater compaction per inch than can be achieved with a pneumatic roller. Louris testified that in his opinion the subsoil would not be adequately compacted if a loaded dump truck were the only compacting equipment used on the job.

The trial court entered judgment awarding appellant nothing for its paving work and awarding costs and disbursements to respondents. Appellant moved the trial court for amended findings or in the alternative for a new trial, and the trial court denied the motion.

## ISSUE

Was there sufficient evidence to support the trial court's failure to award appellant damages for the work performed under the contract?

## ANALYSIS

Minn.Stat. § 514.03 (1984) provides in part as follows:

> With respect to any contract or improvement * * *, * * * [i]f the contribution is made under a contract with the owner and for an agreed price, the lien as against him shall be for the sum agreed upon. * * * In all other cases, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished.

Appellant argues that it fully performed the paving and repair contract, or at least substantially performed, and that therefore it is entitled to the full contract price. *See E.C.I. Corporation v. G.G.C. Co.*, 306 Minn. 433, 436–37, 237 N.W.2d 627, 630 (1976).

In *Ylijarvi v. Brockphaler*, 213 Minn. 385, 7 N.W.2d 314 (1942), a case involving the drilling of a well, the supreme court discussed the contractor's duty of substantial performance in building and construction contracts:

> For present purposes, it is sufficient to say that substantial performance means performance of all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed, except for some slight and unintentional defects which can be readily remedied or for which an allowance covering the cost of remedying the same can be made from the contract price. Deviations or lack of performance which are either intentional or so material that the owner does not get substantially that for which he bargained are not permissible.

*Id.* at 390, 7 N.W.2d at 318; *see Snider v. Peters Home Building Co.*, 139 Minn. 413, 415, 167 N.W. 108, 109 (1918) ("[T]he builder who has in good faith substantially performed, though there are minor defects, if they are of a character which may be so remedied that the owner will have that for which he contracted, may recover on the

contract the agreed price less such sum as will cure the defects"); *Town of Birch Cooley v. First National Bank of Minneapolis*, 86 Minn. 385, 388, 90 N.W. 789, 790 (1902).

The question at issue here, whether there was substantial performance, is generally a question of fact. *See Snider*, 139 Minn. at 414, 167 N.W. at 109. The application of the doctrine depends upon the fact situation of each case, and the nature and extent of the nonperformance are important facts to consider. The trial court made the following findings of fact with respect to the extent of nonperformance:

8. The 1978 work in the area behind the liquor store broke up almost immediately and a "swale" or sunken area, developed, almost immediately, in the parking lot area in front of the liquor store.

 \* \* \* \* \* \*

10. The 2½" asphalt mat, installed by Paving Plus in July, 1978, pursuant to the contract agreement dated June 9, 1978, was not properly installed and was not installed in a workmanlike manner.

11. The 2½" asphalt mat, installed by Paving Plus in July, 1978, pursuant to the contract agreement dated June 9, 1978, would not have broken up, as it did almost immediately after completion of the work, but would have been serviceable for at least three to four years if the installation had been done properly and in a workmanlike manner.

12. The standard practice, in the bituminous asphalt industry, in regard to compaction of base materials, is to comply with contract specifications, if any, and if not, to comply with the Minnesota Department of Transportation Standards.

13. In this case there were no specifications in the contract agreement dated June 9, 1978, regarding compaction, therefore the standards to be followed, by Paving Plus, should be those of the Minnesota Department of Transportation.

 \* \* \* \* \* \*

16. The attempted compaction of the base material by Paving Plus, on the 1978 work, was inadequate; ineffective; not in accordance with industry standards; and not done in a workmanlike manner.

17. The proximate cause of the failure of the 1978 asphalt paving was the failure of Paving Plus to adequately compact the base materials.

Accordingly, the trial court concluded that Paving Plus was not entitled to recover damages.

On appeal from a denial of a motion for new trial, it is not the role of this court to reconcile conflicting evidence. *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild*, 302 Minn. 476, 479, 225 N.W.2d 261, 263 (1975). Rather, in the absence of a jury, findings of fact will not be disturbed unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of witnesses. *Id.;* Minn.R.Civ.P. 52.01.

Appellant argues that, at the very minimum, it substantially performed because Nixon has used the parking lot for seven years. In addition, appellant claims that it is extremely unlikely that new paving work would have broken up completely within a few days of completion. Rather, appellant claims that any breakup in the 1978 paving work was caused not through its own fault but by inadequate packing of the subsoil by Widmar, Nixon's choice of a thin asphalt mat, heavy construction traffic, and the normal breakdown effects of the climate in Minnesota.

 The trial court obviously accepted respondent's version of the events that occurred. The fact that the parking lot is still in use does not prove that the paving did not break up within a short time after completion. There was testimony that despite similar heavy traffic and weather conditions, the two and one-half inch mat for the 1978 work broke up and the 1977 two-inch mat did not. The evidence supported the trial court's finding that the 1978 work broke up because appellant did not properly compact the subsoil and failed to comply

with the DOT standard. We hold that there was no error in denying recovery to appellant for failing to substantially perform.

### DECISION

The trial court did not err in failing to award appellant damages in mechanics' lien foreclosure action.

Affirmed.