John VOIGT, d.b.a. Voigt Construction, Appellant,

v.

D. Edward JONES, et al., Respondents.

No. C6–86–1277.

Court of Appeals of Minnesota.

April 21, 1987.

Elizabeth A. Ristvedt, Donohue and Ristvedt, St. Cloud, for appellant.

Julie Torell, Eller & Schiff, St. Cloud, for respondents.

Heard, considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Appellant John Voigt sued respondents to foreclose a mechanic's lien in the amount of $16,623.65, against property owned by D. Edward Jones and Mary R. Jones. The trial court found that appellant was entitled to no more than $2,000 for his work. We affirm in part and reverse in part.

## FACTS

In August of 1984, respondent Mary Jones acquired student rental property which she wished to have remodeled before renting. Appellant walked through the house with respondents and gave an estimate of cost. Jones, acting through her brother, David Regner, then hired appellant to do the work. Although Regner himself was a contractor, he could not do the remodeling for his sister because of prior commitments. Respondents testified that they informed appellant that Jones had a remodeling budget of $10,000. They further testified that Voigt then told them that his work would cost around $6,000.00, not including subcontractors' charges for

electrical, plumbing, heating and stucco work.

The contract prepared by appellant provided:

> VOIGT CONSTRUCTION shall furnish all materials and perform all work shown on drawings and described in the specifications: Repair and remodeling of rental house to be done on material, labor, and subcontracting basis.
>
> \*   \*   \*   \*   \*   \*
>
> Subject to credit approval, we [Voigt Construction] agree to furnish labor and material specified above for the sum of $2,000.00: payment to be made as follows: *progress billing.*

(Emphasis added).

Regner and appellant testified that the $2,000 figure in the contract referred to a downpayment of one-third of the estimated cost of appellant's work. Jones could not pay $2,000, so appellant instead accepted $500.00 as a downpayment, but did not change the figure in the contract.

Appellant billed respondents for his labor, materials and subcontractors' charges, in one final bill for $16,623.65. Jones paid appellant $6,500.00. Appellant claimed that his labor and materials came to $10,740.97, and that the subcontractors' charges were $5,205.42 and, therefore, he was still owed $10,123.65, and commenced this action.

The trial court found that the parties had a contract for $2,000.00. The court interpreted the term "progress billing" as requiring appellant to bill respondents for every $2,000 of work provided to respondents. The court concluded that since appellant had only billed respondents once, for a total of $16,623.65, he was not entitled to any amount over the initial $2,000, regardless of the reasonable value of his services.

## ISSUES

1. Did the trial court err in finding that the parties had a contract for $2,000?

2. Is the evidence sufficient to support the trial court's determination that appellant gave respondents a firm bid of $6,000?

3. Does the failure to provide progress billings relieve respondents of any liability to appellant beyond $2,000?

## ANALYSIS

Appellant contends that he should be able to recover the figure billed, or at least the reasonable value of his services. In order for a mechanic's lien to be enforceable, two requirements must be met: "[t]he services provided must be lienable improvements as described in Minn.Stat. § 514.01 (1984) and the lien must be enforceable against the interest in the property held by the defendant." *Korsunsky Krank Erickson Architects v. Walsh,* 370 N.W.2d 29, 31 (Minn.1985). The underlying basis permitting the imposition of a lien on respondent's property is their consent to the improvement of the property. *Id.* Respondents' consent is inferred from the contract to perform the improvement. *Laird v. Moonan,* 32 Minn. 358, 360, 20 N.W. 354, 354 (1884).

Once it is clear that the lien is enforceable, the trial court must then determine the amount of the lien. Minn.Stat. § 514.03, subd. 2 (1984) provides in pertinent part:

> With respect to any contract or improvement \* \* \* the lien shall be as follows:
>
> (a) If the contribution is made under a contract with the owner and for an *agreed price,* the lien as against him shall be for *the sum agreed upon.*
>
> (b) In all other cases, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished. \* \* \*

*Id.* (emphasis supplied).

The trial court found:

1. that respondents entered into an agreement with Voigt to complete some remodeling;

2. that Voigt received a $500 downpayment;

3. that the contract required appellant to submit bills to respondents whenever $2,000 or work and/or materials had been provided;

4. that appellant failed to so bill respondents, despite their frequent requests that he do so;

5. that respondents did not have access to information regarding receipts for materials, labor records, and the names of the subcontractors;

6. that respondents paid appellant $6,500.

### 1. Contract for $2,000

■ The existence of a contract is primarily a question of fact to be determined by the trial court on the basis of the evidence presented and the surrounding circumstances. The trial court's findings will not be reversed unless they are manifestly and palpably contrary to the evidence. *Brekken v. Holien,* 289 Minn. 95, 98, 182 N.W.2d 717, 720 (1970). Although the written contract itself would support the trial court's finding of a contract for $2,000.00, at trial, the parties testified that the written contract did not encompass their total agreement. The parties testified that appellant estimated that his work would cost around $6,000, not including the subcontractors' charges. The $2,000 figure merely represented a downpayment of one-third of the estimated cost. Therefore, the trial court's finding that the parties had a remodeling contract for $2,000 is clearly erroneous.

### 2. Contract for $6,000

■ Respondents claim that even if the trial court's finding of a contract for $2,000 is erroneous, appellant should not recover any sum over his estimated figure of $6,000. In its memorandum the trial court stated that respondents had not only informed appellant that they had a remodeling budget of $10,000, but had also been assured by appellant that they were within this budget. The court further stated that since Jones had apprised appellant of this budget, appellant knew that the $6,000 estimate was "more than an estimate."

Appellant claims that respondents' $10,-000 budget applied only to his charges, not to the total cost of the remodeling, and that he should not be bound by his $6,000 esti-mate of cost, noting that Jones not only testified at trial that she knew the difference between a bid and an estimate, but also had been a party to contracts involving written bids. Appellant claims that *Brekken,* 289 Minn. 95, 182 N.W.2d 717, and *Malmin v. Grabner,* 282 Minn. 82, 163 N.W.2d 39 (1968) support his claim that the parties entered into an open and running contract.

In both *Brekken* and *Malmin,* the supreme court upheld the trial courts' determinations that the contractors' estimated costs were not firm bids. In both cases, the court noted that there was conflicting evidence on the issue, but found sufficient evidence in each case to support the finding that the contract was not limited to a specific figure. In this case, respondents testified that they believed the $6,000 figure was a firm bid because they had informed appellant of their budget, had been assured by appellant that they were within budget, and were to be billed as the project progressed, so that they could control the budget. Thus, the trial court's determination that the $6,000 was a firm bid is not clearly erroneous.

### 3. Progress Billings

■ The trial court found that appellant had promised to provide "progress billings" for every $2,000 of work performed. Jones testified to this effect at trial. Appellant testified that the term merely meant that as the work progressed and he was billed by his subcontractors and materialmen, he would then bill respondents, and that the $2,000 figure did not relate to the billing process. Although we agree that appellant's view is more credible, the trial court's finding is not clearly erroneous. Yet, we disagree with the trial court that appellant's failure to provide "progress billings" relieved respondents of any obligation to pay any sum over $2,000. Appellant may be denied further recovery only if his failure to provide progress billings was a material breach of the construction contract.

■ Here, respondents testified that the progress billings were required to keep them within their budget. Viewing the evi-

dence most favorably to respondents, the trial court could find that the term "progress billing" meant that appellant would keep respondents apprised as to the cost of the project as the work progressed. However, even if this is so, the failure to so bill respondents does not amount to a material breach.

In *Ylijarvi v. Brockphaler,* 213 Minn. 385, 7 N.W.2d 314 (1942), the court discussed construction contracts and stated:

> The duty under a contract is full and complete performance. In the case of building and construction contracts, the rule has been generally adopted that such duty is satisfied by substantial performance. * * * [T]he owner should not have without payment the benefits of, and the contractor should not forfeit, labor and materials expended in constructing essentially that for which the parties bargained.
>
> *     *     *     *     *     *
>
> [S]ubstantial performance means performance of all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed, except for some slight and unintentional defects which can be readily remedied or for which an allowance covering the cost of remedying the same can be made from the contract price. Deviations or lack of performance, which are either intentional or so material that the owner does not get substantially that for which he bargained, are not permissible.

*Id.* at 389–90, 7 N.W.2d at 318. The application of the doctrine depends upon the fact situation of each case, and the nature and extent of the nonperformance are important facts to consider. *Paving Plus, Inc. v. Professional Investments,* 382 N.W.2d 912, 915 (Minn.Ct.App.1986). In this case, respondents did not allege in their answer that the remodeling was inadequate or incomplete. In addition, the tenants were able to move into the house fairly soon. We hold that appellant substantially performed under the contract.

Appellant is entitled to recover the contract price for his work, which respondents testified was "around $6,000." At trial, their expert, Les Hughes, testified that he would have charged respondents $7,500 for the work done by appellant. Respondents have already paid appellant $6,500 for the remodeling. We hold that since appellant's bid did not include the subcontractors' charges of $5,205.42, respondents must pay these charges, which they do not claim are unreasonable.

Finally, we find little merit to appellant's claim that the trial court's decision was a result of passion and prejudice.

## DECISION

We reverse the trial court's finding that the parties had a remodeling contract for $2,000, and that appellant's failure to provide bills for every $2,000 spent relieved respondents from any liability to appellant beyond $2,000. We affirm the court's finding that appellant's estimation of cost was a firm bid. We further hold that appellant substantially performed the remodeling contract and is therefore entitled to recover his contract price. Respondents must also pay the subcontractors' charges of $5,205.42, which were not included in appellant's bid, bringing the total contract price to $11,705.42.

Affirmed in part and reversed in part.