Michael STEFFL d.b.a. Steffl Well Drilling, Respondent,

v.

Paul ROEDIGER, et al., Appellants.

No. C7–86–2230.

Court of Appeals of Minnesota.

May 19, 1987.

James Brian O'Leary, O'Leary & Moritz, Chartered, Springfield, for respondent.

Mark J. Schneider, Neeser Law Office, Willmar, for appellants.

Considered and decided by POPOVICH, C.J., and HUSPENI and MULALLY, JJ.,* with oral argument waived.

## OPINION

HUSPENI, Judge.

Paul and Phyllis Roediger appeal from a judgment enforcing and foreclosing a mechanic's lien in favor of Michael Steffl. The Roedigers argue that the trial court erred in entering judgment for Steffl because he had not substantially performed the contract and in enforcing a mechanic's lien because the statutory notice requirements for creating such a lien had not been met. We affirm in part, reverse in part and remand.

## FACTS

Paul Roediger and Michael Steffl met on August 14, 1985, to discuss drilling a well on the Roedigers' property to service a planned minnow hatchery operation. Roediger showed Steffl the location of an existing 60 foot deep well which, although not tested, Roediger believed provided water with a relatively low iron content. Two other deeper wells on the property produced water with high iron levels. He explained to Steffl that water with a high iron content is not suitable for hatchery use. Roediger wanted a well drilled in the same location as the existing well with a low iron level, and he wanted it drilled to the depth of 60 feet in order to tap the same aquifer as the existing well of that depth. He also wanted five-inch casing used in order to increase the pumping capacity beyond that possible with the two-inch casing used in the existing 60 foot well.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

537 number at top right

Steffl, an experienced well driller, explained that state law prohibited drilling into the existing well pit. A nearby location was selected by the two men, although there is some disagreement about the precise drilling spot chosen.

Steffl filled out a form labeled "Job Invoice" and gave it to Roediger. The form contained Roediger's name and address and the following information:

| Quant. | Description of material used | Price | Amount |
|--------|------------------------------|-------|--------|
| 60′ | 5″ drilling & casing | 14.50/ft. | 870.00 |
| 5′ | 5′ stainless steel screen | 60.00/ft. | 300.00 |
| | Screen fitting | | 70.00 |
| | Chlorination & water test | | 40.00 |
| | | | 1280.00 |

On the morning of August 15, Steffl and his brother Thomas set up the drilling rig. Roediger states that he was unaware the rig was on his property until he came out of his house after the rig had been set up. Steffl says he called Roediger before moving the rig to the site. Roediger did not speak to either of the Steffls upon seeing the rig located on his property. When drilling reached 13 to 14 feet, a rock layer interrupted the drilling. Roediger then spoke briefly to Michael Steffl but did not comment on the location of the well.

The Roedigers left to do some shopping. During their absence drilling reached 60 to 65 feet. Steffl then went to the Roediger house to tell them of the depth reached without finding water. Unable to talk to the Roedigers, Steffl decided to keep drilling. When Roediger returned to the drilling site a few hours later, Steffl said they had reached water at a depth of 106 feet. Roediger did not complain but stated he hoped they had found good water, meaning water with a low iron content.

Roediger had the water tested and found it contained 5.7 parts per million of iron. The two wells on the property which produced water with an unusable iron content tested at 2.7 and 3.3 parts per million of iron. Roediger refused to pay the $1,947 billed for the 106 foot deep well and has not used water from the well. While the water is safe for human consumption, a filtration system costing over $4,000 would be needed to make the water usable for minnow hatchery purposes according to Roediger.

Steffl commenced this action to enforce and foreclose a mechanic's lien, and Roediger counterclaimed for breach of contract damages. The trial court awarded Steffl judgment in the amount of $1,947, determined that a mechanic's lien had been created and ordered foreclosure.

## ISSUES

1. Did the trial court err in awarding judgment because Steffl had not substantially performed the contract?

2. Was an independent contractor involved, requiring notice under Minn.Stat. § 514.011 (1984) in order to create a mechanic's lien?

## ANALYSIS

### I.

The duty under a contract is full and substantial performance. *Ylijarvi v. Brockphaler*, 213 Minn. 385, 389–90, 7 N.W.2d 314, 318 (1942). In well drilling contracts, this duty is satisfied by substantial performance. *Id.*

> [S]ubstantial performance means performance of all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed, except for some slight and unintentional defects which can be readily remedied or for which an allowance covering the cost of remedying the same can be made from the contract price. Deviations or lack of performance, which are either intentional or so material that the owner does not get substantially that for which he bargained are not permissible.

*Id.* at 390, 7 N.W.2d at 318.

The Roedigers argue that Steffl has not substantially performed the contract, which they contend required drilling a well with five inch casing at the site of an existing well, and drilling to the depth of 60 feet in an attempt to tap an aquifer of low iron water for the purpose of providing water suitable for a minnow hatchery. There is no issue regarding the size of the casing

because five inch casing was used. Regarding location of the well, Steffl told Roediger that the well could not be drilled into the existing well pit and Roediger agreed that an alternate site could be used. Further, Roediger saw where the drilling rig was set up before drilling began and did not protest the location. As a result, Roediger either contracted for a well to be drilled at the site used or, by his failure to complain, agreed to modify the contract. Consequently, there is no issue regarding location of the well.

There is an issue regarding the contract element relating to depth of the well. Was there a contract to drill to a specific depth in order to tap an aquifer Roediger believed contained water of a specific quality, or did the contract merely specify the per foot cost of drilling a well? The trial court made several findings regarding the contractual obligations of the parties:

The parties entered into a written contract with themselves on August 14, 1985, providing for the drilling of a 5 inch casing well, at 60 feet for the agreed price of $1,280.00, with the work to be performed within two weeks or earlier if [Steffl] became available. The [Roedigers] discussed the reasons for the drilling [of] the well with [Steffl] prior to entering into the contract. The [Roedigers] requested that the well be drilled to approximately 60 foot level because the existing well had water which they felt suitable for their business. * * * The parties has [sic] no discussion as to what would happen if they did not hit water at 60 feet or if the well had to be drilled at a different depth. The [Roedigers] did not advise [Steffl] that he should not drill beyond the 60 foot depth to obtain water.

* * * * * *

[Steffl] did not seek permission from [the Roedigers] or any of [their] agents as to drilling the well beyond 60 feet.

* * * * * *

[Steffl] did not guarantee the quality of the water to be obtained.

■ The trial court's findings in determining what bargain was reached by the parties and whether there had been substantial performance of that bargain may be overturned only if the reviewing court is left with the definite and firm conviction that a mistake has been made. *ICC Leasing Corp. v. Midwestern Machinery Co.,* 257 N.W.2d 551, 555 (Minn.1977). Here, the trial court was mistaken in finding that Steffl did not seek permission to drill beyond 60 feet. Steffl testified that he had attempted to get permission, but when he was unable to do so, he continued drilling. Because the court's finding is mistaken, it must be set aside.

■ We are left with a finding that there was a written contract for a 60 foot deep well at a cost of $1,280. The court also found that Steffl had been informed of the purpose of the contract, which was an attempt to reach an aquifer that the Roedigers believed contained water suitable for their business. The findings support the Roedigers' position that there was a contract for a well of a certain depth and that a deeper well would frustrate the purpose of tapping an aquifer believed to provide acceptable water.

We recognize that the trial court found that the parties did not discuss what would happen if water was not found at the 60 foot depth. However, the parties had discussed the purpose of drilling the well. The absence of a discussion about drilling deeper does not contradict the finding that the parties contracted for a 60 foot well. Instead, it supports a conclusion that there was a contract for a well of a specific depth. Nor does the finding that Steffl did not guarantee the quality of water weigh against such a conclusion. If, at the 60 foot depth, water with a high iron content were located, Roediger could not have relied on a guarantee by Steffl that the water would have a low iron content.

Having concluded that the contract called for drilling a well of a specific depth, we can agree with the trial court's implied determination that there was substantial performance of the contract. Steffl did drill to 60 feet, although he did not find water at that level. The risk of a dry, 60 foot deep hole is a risk that Roediger ac-

cepted in entering into a contract for a well of a specific depth. He is therefore obligated to pay for the services rendered under the contract.

The trial court, however, awarded judgment for the amount Steffl billed for drilling a 106 foot deep well. The contract did not provide for drilling the additional 46 feet, and the Roedigers did not agree to modify the contract. Steffl's attempt to contact Roediger when drilling had reached 60 feet indicates that Steffl recognized the contract's limitations. Accordingly, the Roedigers are under no contractual obligation to pay for this additional service. We therefore reverse the trial court's determination of the amount of the judgment and remand this matter to the trial court for entry of a judgment consistent with the conclusion that the parties had contracted for the drilling of a 60 foot deep well.

## II.

The trial court found that a mechanic's lien had been created. The mechanic's lien statute is to be strictly construed when determining whether a lien has been created. *Enviro-Fab, Inc. v. Blandin Paper Co.*, 349 N.W.2d 842, 846 (Minn.Ct.App.1984). The Roedigers argue that Thomas Steffl was an independent contractor working on the well drilling job at the direction of his brother Michael Steffl. Where an independent contractor is involved, Minn.Stat. § 514.011 (1984) requires notice to the contracting party before a mechanic's lien is created. Such notice was not provided here.

At the trial the testimony regarding an independent status of Thomas Steffl came when he was cross examined:

Q. Tom, you make your home where? In the town of Springfield?

A. Right. Correct.

Q. Do you own your own business there?

A. I work with my father and my brother.

Q. Kind of as an independent—

A. —right.

Q. As an independent agent?

A. Right.

Michael Steffl testified that his brother was not an owner of the well drilling business and that he paid his brother both an hourly wage and a percentage.

Although the court expressed some uncertainty at the close of the trial as to the employment status of Thomas Steffl, the evidence supports its finding that Thomas Steffl was an employee. He was paid on an hourly basis, in addition to receiving a percentage. His agreement on cross examination that he was an independent agent does not explore the elements necessary to establish an independent contractor relationship, such as the ability of Thomas Steffl to control his own working hours. Rather, it implies that Thomas Steffl described himself as "independent" because he worked for both his brother and his father. The evidence in the record is not sufficient to set aside the court's finding that a mechanic's lien was created.

### DECISION

While there was substantial performance of the contract, the trial court erred in including in the judgment the cost of services beyond those for which the parties had contracted. The matter is remanded for entry of judgment in accordance with this opinion.

Affirmed in part, reversed in part and remanded.